Edgardo Manguin **ALQUISALAS,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 93-70869.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 1995.

Decided July 28, 1995.

Donald Ungar, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, CA, for petitioner.

Carl H. McIntyre, Nelda C. Reyna, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: GOODWIN, SNEED, and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

Edgardo Manguin Alquisalas, a native and citizen of the Philippines, appeals the Board of Immigration Appeals' ("BIA") denial of his motion to reopen deportation hearings for a consideration of his application for a waiver of deportation under 8 U.S.C. § 1251(f)(1). The BIA refused to grant the motion because it found Alquisalas' 1984 marriage in the Philippines was entered into for the purpose of evading United States immigration laws. Under the compulsion of *Braun v. INS*, 992 F.2d 1016 (9th Cir.1993), *Delmundo v. INS*, 43 F.3d 436 (9th Cir.1994), and *Yang v. INS*, 58 F.3d 452 (9th Cir.1995), we are required to hold that the BIA abused its discretion and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Alquisalas, a native and citizen of the Philippines, was admitted to the United States as a lawful permanent resident on January 12, 1983, under 8 U.S.C. § 1153(a)(1), which provides immigrant visas to the unmarried children of United States citizens. This entry was fraudulent because Alquisalas had been married to Gloria Artajo, a citizen of the Philippines, since 1979, and had two children with her. A year after his fraudulent entry, Alquisalas returned to the Philippines and remarried his wife. He then returned to the United States without her and apparently made no subsequent attempt to reunite the family.

On January 27, 1989, the Immigration and Naturalization Service ("INS") issued Alquisalas an Order to Show Cause, charging that he was deportable under 8 U.S.C. § 1251(a)(1) because he had lied about his marital status when he applied for the immigrant visa under which he entered the United States. At the deportation hearing, September 14, 1989, Alquisalas argued that he had not obtained his visa by fraud because he was not legally married to Artajo when he first entered the United States. He claimed his first "marriage" was merely an engagement, or if it were a marriage, invalid, as he had been forced into it, had not understood that he was signing a marriage contract and had been drunk.

The Immigration Judge ("IJ") refused to believe Alquisalas' version of events and held that the evidence established that Alquisalas had entered into a binding contract of marriage with Artajo in the Philippines in 1979. The IJ decided Alquisalas was consequently deportable as charged. Immediately after his deportation hearing, on September 15, 1989, Alquisalas divorced Gloria Artajo. Several months later, on February 24, 1990, he married Laurie Tavares, a United States citizen.

Alquisalas appealed the IJ's decision to the BIA, contesting his deportability and moving to reopen deportation proceedings to allow him to apply for a suspension of deportation and a waiver of deportation under 8 U.S.C. § 1251(f)(1), which allows the Attorney General to waive deportation for aliens who, like Alquisalas, had fraudulently obtained an immigrant visa but are now married to a United States citizen. 8 U.S.C. § 1251(f)(1), *repealed by* Pub.L. No. 101–649, § 602(b)(1), 104 Stat. 5081 (1990) (current version at 8 U.S.C. § 1251(a)(1)(H)).[1] On October 7, 1993, the BIA affirmed the IJ's decision and denied the motion to reopen.[2] Alquisalas now appeals only that portion of the BIA's opinion denying his motion to reopen to allow him to apply for a waiver of deportability.

## DISCUSSION

■ The Attorney General has discretion to waive deportation for an alien excludable at the time of entry for procurement of an immigrant visa by fraudulently representing himself to be the unmarried son of an United States citizen. 8 U.S.C. § 1251(f)(1). Until recently, the Attorney General had "broad discretion" to grant or deny motions to reopen. *INS v. Rios–Pineda*, 471 U.S. 444, 449, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985).

In this circuit, the cases cited above, beginning with *Braun*, have called this discretion into serious question. Without direction by an *en banc* court, however, we are not at liberty to disregard language in recent cases which appears to substitute our discretion for that of the Attorney General.

We say we review for abuse of discretion the BIA's denial of Alquisalas' motion to reopen based on the determination that, even

though he introduced new evidence establishing statutory eligibility for waiver, he would not be entitled to the exercise of discretion. *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988).

■ After weighing the equities, the BIA decided that Alquisalas was not deserving of a waiver of deportability. The BIA explicitly considered his marriage to a United States citizen, his financial and emotional support of her and her son from a prior marriage, the fact that his parents and several siblings were United States citizens, his continuous gainful employment and his compliance with tax reporting requirements. The BIA did not consider, as it may not, in this circuit, Alquisalas' fraudulent application for an immigrant visa, and related fraudulent conduct. *Braun*, 992 F.2d at 1020; *see also Delmundo*, 43 F.3d at 440–441; and *Yang*, 58 F.3d 452.

■ The BIA characterized as fraud the 1984 marriage to Gloria Artajo. The BIA then decided this marriage had been nothing more than a sham to allow Artajo and their two children to immigrate to the United States. Because no evidence in the record supports this conclusion, there was nothing in the record to support a finding of any new or different fraud beyond that of Alquisalas' original entry. The record does not reveal that either Alquisalas or Artajo ever attempted to take advantage of the 1984 marriage. The record does show that Artajo was residing in the Philippines when Alquisalas divorced her in order to marry his United States citizen wife. And the record does not show that Gloria ever applied for a visa.

The INS argues that this case should be controlled by the reasoning in *Start v. INS*, 803 F.2d 539 (9th Cir.1986), *opinion with-*

---

1. Because Alquisalas' hearing occurred before the 1990 amendment to the statute, the former version, which is virtually identical to the new, applies to his case. The relevant portion of the statute reads, "[t]he provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien ...

who (i) is the spouse ... of a citizen of the United States ... and (ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility ... which were a direct result of that fraud or misrepresentation."

2. A motion to reopen submitted while an appeal is pending before the BIA is treated as a motion to remand. 8 C.F.R. § 3.1(d)(2). ·

*drawn as moot*, 862 F.2d 787 (1988). Start immigrated to the United States, claiming to be the unmarried son of a United States citizen, although he was already married and had children. He then returned home to remarry his wife specifically "in order to allow her and the children to immigrate into the United States." *Start*, 803 F.2d at 542. We correctly upheld the BIA's denial of waiver based on these "multiple frauds." However, because neither Alquisalas nor Artajo ever attempted to use for immigration purposes the 1984 marriage, *Start* would not be in point, even if it were still good law. Because *Start* was vacated, it is no longer binding precedent.

■ Alquisalas' only fraudulent act with respect to his marriages was in not admitting to being married when he first applied for his visa to come to this country. Merely marrying his wife a second time, without more, is not fraud. The BIA knew only that Alquisalas had lied in his application for an immigrant visa about his 1979 marriage to Artajo, and that Alquisalas had remarried Artajo in the Philippines in 1984. Because the record reveals no fraudulent purpose in the second ceremonial marriage, the "fraud" alleged by the BIA is nothing more than the Alquisalas' original fraudulent entry, which may not be relied on to deny a waiver under § 1251(f)(1). *Braun*, 992 F.2d at 1020–21; *see also Delmundo*, 43 F.3d at 440; and *Yang*.

In *Braun*, a native and citizen of Mexico entered the United States as the spouse of a citizen, whom he had married solely for the purpose of immigrating. A year later, Braun divorced his American wife and remarried his former Mexican wife, who had entered this country legally with a border crossing card, entitling her to a temporary stay. We rejected the INS's contention that Braun had married his Mexican wife as part of an "elaborate plan" to defraud the government, and held that Braun's action in marrying his Mexican wife a second time constituted nothing more than his original fraudulent entry.

In light of *Braun*, *a fortiori* the BIA should not have denied discretionary relief to Alquisalas on the basis of his 1984 marriage. Under the compulsion of *Braun*, and its

progeny, Alquisalas is entitled to have his motion to reopen considered on its merits.

REMANDED.