2 Cal.Rptr.3d 544 (2003)
110 Cal.App.4th 1489
The PEOPLE, Plaintiff and Respondent,
v.
Misael CASTELLANOS, Defendant and Appellant.
No. B159673.
Court of Appeal, Second District, Division Five.
July 31, 2003.
Review Denied October 15, 2003.
Mark Ankcorn, under appointment by the Court of Appeal, Santa Ana, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Susan D. Martynec, Supervising Deputy Attorney General, Alan D. Tate, Deputy Attorney General, for Plaintiff and Respondent.
Certified For Partial Publication.[*]
TURNER, P.J.

I. INTRODUCTION
Defendant Misael Castellanos, appeals from his conviction for possession of a firearm by a felon (Pen.Code,[1] § 12021, *545 subd. (a)(1)) and of a counterfeit seal. (§ 472.) Defendant argues the prosecutor improperly exercised peremptory challenges during jury selection and there was insufficient evidence to support a conviction for possession of a forged or counterfeit resident alien card. Defendant also argues he is entitled to four additional days of presentence conduct credit. In the published portion of this opinion, we discuss the sufficiency of the evidence that defendant violated section 472. We modify the judgment to award defendant additional presentence credits.

II. FACTUAL BACKGROUND
We view the evidence in a light most favorable to the judgment. (Jackson v. Virginia (1979) 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560; People v. Osband (1996) 13 Cal.4th 622, 690, 55 Cal. Rptr.2d 26, 919 P.2d 640; Taylor v. Stainer (9th Cir.1994) 31 F.3d 907, 908-909.) In July 2001, defendant purchased a 1979 Datsun automobile from Jesus Gutierrez, who had just bought it a few weeks earlier at a police auction. Mr. Gutierrez had cleaned the car and never noticed a handgun inside the Datsun. On November 18, 2001, California Highway Patrol State Traffic Officer David Guler stopped defendant, who was driving the Datsun on a freeway for speeding. Defendant provided an automobile registration but no driver's license. Defendant gave his name, address, and birth date. The Datsun was not registered in defendant's name. However, defendant stated that he bought it "a while ago." Officer Guler subsequently determined that defendant was not licensed to drive a motor vehicle. Defendant was issued a citation. Defendant placed his thumbprint on the original citation. The Datsun was impounded for 30 days.
The Datsun was towed to an impound yard by Barrington Branch, an employee of California Coach. Mr. Branch inventoried the personal property inside the Datsun. When Mr. Branch removed a yellow rag from between the driver's seat and center console, he found a loaded .38-caliber revolver. Mr. Branch also found a baggie containing 20 rounds of .38-caliber ammunition under the seatcover of the passenger seat. These items were turned over to Officer Guler.
On December 13, 2001, California Highway Patrol State Traffic Officer Brian Caporrimo went to defendant's residence with two other investigators. The officers saw defendant walking toward the residence. The officers stopped defendant and asked him about the citation he received in November. Defendant acknowledged that he had received a citation and his car had been impounded. Defendant also acknowledged that the property in the car belonged to him and that he was the sole driver of the car. Defendant was arrested. When defendant was searched incident to that arrest, California identification, Social Security, and immigration cards were removed from his wallet. During the booking process, defendant indicated he was born in Guatemala.
Immigration and Naturalization Service Special Agent Bonita Canterberry examined the legal permanent resident card found in defendant's possession at the time of his arrest. Agent Canterberry did not believe the card was legitimate because: the writing within the seal was illegible; the fingerprint was in the wrong place; the ink on the card was blue; an authentic card would not have an original signature or fingerprint; the card did not contain a point of entry on the front of the card; the card represented a combination of Immigration and Nationalization cards issued in 1977 and 1989; and the card did *546 not have a legitimate number. When defendant's name, birthdate, parents' names were processed by computer, Ms. Canterberry discovered he entered the country as a visitor on April 3, 1983. Additional records revealed an application for petition for visa was made by defendant's wife, who is an American citizen, on August 17, 2001. The application includes the statement that the applicant cannot enter the United States without the permission of the Attorney General. If an applicant has been arrested and served time in prison, the petition is automatically denied. Because defendant had been convicted of a felony in 1993, he would have been ineligible for a visa. Without a visa, the individual is not entitled to either a resident alien card or a Social Security card.

III. DISCUSSION

A. Wheeler Motion[**]
Defendant argues there was insufficient evidence to support his conviction for possession of a forged or counterfeit resident alien card in violation of section 472. In reviewing a challenge of the sufficiency of the evidence, we apply the following standard of review: "[We] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (People v. Mincey (1992) 2 Cal.4th 408, 432, 6 Cal.Rptr.2d 822, 827 P.2d 388, fn. omitted; People v. Hayes (1990) 52 Cal.3d 577, 631, 276 Cal.Rptr. 874, 802 P.2d 376; People v. Johnson (1980) 26 Cal.3d 557, 576, 162 Cal.Rptr. 431, 606 P.2d 738; see also People v. Gurule (2002) 28 Cal.4th 557, 630, 123 Cal. Rptr .2d 345, 51 P.3d 224.) Our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Jackson v. Virginia, supra, 443 U.S. at pp. 318-319, 99 S.Ct. 2781; Taylor v. Stainer, supra, 31 F.3d at pp. 908-909; People v. Bolin (1998) 18 Cal.4th 297, 331, 75 Cal.Rptr.2d 412, 956 P.2d 374.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (People v. Rodriguez (1999) 20 Cal.4th 1, 11, 82 Cal. Rptr.2d 413, 971 P.2d 618; People v. Stanley (1995) 10 Cal.4th 764, 792, 42 Cal. Rptr.2d 543, 897 P.2d 481; People v. Bloom (1989) 48 Cal.3d 1194, 1208, 259 Cal.Rptr. 669, 774 P.2d 698; People v. Bean (1988) 46 Cal.3d 919, 932, 251 Cal. Rptr. 467, 760 P.2d 996.) The California Supreme Court has held, "Reversal on this ground is unwarranted unless it appears `that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (People v. Bolin, supra, 18 Cal.4th at p. 331, 75 Cal.Rptr.2d 412, 956 P.2d 374, quoting People v. Redmond (1969) 71 Cal.2d 745, 755, 79 Cal. Rptr. 529, 457 P.2d 321.)
There was substantial evidence to support defendant's conviction for possession of a counterfeit government seal. Section 472 provides in relevant part: "Every person who, with intent to defraud another, forges, or counterfeits the seal of this State, the seal of any public officer authorized by law ... or any other public seal authorized or recognized by the laws of this State ... Government, or country, or who falsely makes, forges, or counterfeits any impression purporting to be an impression of any such seal, or who has in his possession any such counterfeited seal or impression thereof, knowing it to be counterfeited, and willfully conceals the same, is guilty of forgery." Section 8 provides: *547 "Whenever, by any of the provisions of this Code, an intent to defraud is required in order to constitute any offense, it is sufficient if an intent appears to defraud any person, association, or body politic or corporate, whatever." In this case the jury was instructed with CALJIC No. 15.00, which provides in pertinent part: "In order to prove this crime, each of the following elements must be proved: [H] 1. A person had in his possession a counterfeited impression of a public seal; [1] 2. That person knew the impression to be counterfeit and willfully concealed that fact; and [U] 3. That person acted with the specific intent to defraud another person."
Defendant further argues that because he neither presented nor furnished the resident alien card to obtain money or property of value there is no substantial evidence he had the intent to defraud. Defendant is mistaken. In People v. Gaul-Alexander (1995) 32 Cal.App.4th 735, 741, 38 Cal.Rptr.2d 176, the court held: "Forgery has three elements: a writing or other subject of forgery, the false making of the writing, and intent to defraud. (2 Witkin & Epstein, Cal.Criminal Law (2d ed. 1989) Crimes Against Property, § 697, p. 792.) The subject of forgery is ordinarily an instrument or other writing which, if genuine, would create some legal right or obligation. [Citation.]" In People v. Wilkins (1972) 27 Cal.App.3d 763, 773, 104 Cal.Rptr. 89, the court held: "Specific intent as an element of a crime may be proved by circumstantial evidence." (see also People v. Rodriguez (1969) 272 Cal. App.2d 80, 86, 76 Cal.Rptr. 818; People v. Williams (1967) 252 Cal.App.2d 147, 154-155, 59 Cal.Rptr. 905.) The Wilkins court held that the defendant's possession of blank sheets of Selective Service cards and instructions on making California driver's licenses could lead a reasonable trier of fact to infer that he possessed the requisite intent to defraud. (People v. Wilkins, supra, 27 Cal.App.3d at p. 773, 104 Cal.Rptr. 89.) In Lewis v. Superior Court (1990) 217 Cal.App.3d 379, 388, 265 Cal. Rptr. 855, the court looked to common law to define forgery: "Making virtually any kind of false document affords an inference that the maker intends to deceive someone. However, only a document with apparent legal efficacy is naturally suited to perpetrate the kind of deception that is strictly speaking a defrauding. Fabricating such a document by that very act affords an inference of an intention to `defraud,' namely by such deceit to detrimentally accomplish something akin to a theft by false pretenses."
In this instance, the forged or counterfeit resident alien card in defendant's possession did not contain a point of entry on the front of the card. The card represented a combination of Immigration and Nationalization cards issued in 1977 and 1989. The forged or counterfeit card did not have a legitimate number. The forged or counterfeit resident alien card bearing defendant's photograph would create a legal right or obligation to someone such as a prospective employer. The employer might reasonably conclude defendant would be lawfully authorized to work in the United States. Likewise, it could be, and apparently was, used to secure a Social Security card in defendant's name. Substantial evidence supports the intent to defraud element.

C. Presentence Credits [***]

IV. DISPOSITION
The superior court clerk is directed to correct the abstract of judgment to reflect defendant's presentence credits of 212 *548 days, including 142 actual days and 70 days of conduct credit. The superior court clerk shall forward a corrected copy of the abstract of judgment to the Department of Corrections. The judgment is affirmed in all other respects.
We concur: GRIGNON and MOSK, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.A, the heading for part III.B, and part III.C.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[**] See footnote *, ante.
[***] See footnote *, ante.